UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT BROOKS #313348,

    Plaintiff,                                         Hon. Hala Y. Jarbou

v.                                                     Case No. 1:19-cv-960

JOAN E. ROGERS,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections (MDOC) at Lakeland Correctional Facility (LCF), has sued Defendant Joan Rogers, a Registered Dietician with the MDOC, alleging that she violated and continues to violate his Eighth Amendment rights by failing to provide him an individualized therapeutic diet for his Crohn's disease that he claims a gastroenterologist ordered in December 2018. Plaintiff seeks declaratory, injunctive and monetary relief. Presently before the Court are Rogers's Motion for Summary Judgment (ECF No. 22) and Plaintiff's Motion for Preliminary Injunction (ECF No. 17.) Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Rogers's motion be **GRANTED,** and Plaintiff's motion be **DENIED AS MOOT**.

                                           **I.**        **Background**

    A.     **Plaintiff's Crohn's Disease**

Plaintiff was diagnosed with Crohn's Disease in July 2011 by a gastroenterologist. (ECF No. 1 at PageID.3.) Crohn's Disease is a type of inflammatory bowel disease that inflames the

digestive tract and can cause abdominal pain, diarrhea, fatigue, weight loss and malnutrition.[1] There is no cure for Crohn's Disease, but, like cancer, it can go into remission. (ECF No. 23-3 at PageID.172.) The disease is typically managed through various types of medications, diet, and lifestyle changes and, in severe cases, surgery.[2] Plaintiff's symptoms were triggered by certain foods, such as red meat, vegetable and fruit skins, whole grain breads, and raw and undercooked vegetables. (ECF No. 1 at Page.4.)

By late 2016, Plaintiff's symptoms, which included extreme abdominal pain, chronic bloody diarrhea, fever, fatigue and weight loss, could no longer be controlled by medication. (ECF No. 1 at PageID.3–4.) Plaintiff's symptoms were so severe that he was hospitalized a minimum of 15 times—sometimes longer than a week—between December 2016 and December 2018. Plaintiff was not incarcerated from February 2016 through December 2016. During this period, he was hospitalized several times due to complications from his Crohn's Disease. (ECF No. 23-3 at PageID.171.) In fact, when Plaintiff faced new charges in December 2016, he had to be arraigned from his hospital bed. (*Id.*) Plaintiff's condition has progressively worsened with age. (*Id.*)

Since his return to the MDOC, Plaintiff has been hospitalized at least seven times for flare-ups that included severe abdominal pain, profuse rectal bleeding, and chronic diarrhea. (ECF No. 1 at PageID.5.) However, his symptoms during these hospitalizations did not always suggest a flare-up of his Crohn's Disease. In August 10, 2018, Plaintiff was admitted to Duane Waters Hospital following one week of "severe abdominal pain, nausea, vomiting, [and] bloody diarrhea." (ECF No. 23-6 at PageID.195.) Plaintiff's treatment notes reflected that "[t]he patient has been admitted to DWH multiple times with frequent local ER visits for abdominal pain without evidence

---

[1] *See* https://www.mayoclinic.org/diseases-conditions/crohns-disease/symptoms-causes/syc-20353304 (last visited Jan. 13, 2021).

[2] *Id.*

of Crohn's disease exacerbation in the past two years. (*Id.*) The provider noted that Plaintiff's "facial expressions, ADL functions, Blood workup results and vital signs change did not match reported severe pain. The recent result of CT abdomen and blood workup did not suggest acute Crohn's disease exacerbation." (*Id.* at PageID.196.) The provider ordered various tests to determine the cause of Plaintiff's symptoms and rule out that they were not complications from Crohn's Disease. (*Id.*) Plaintiff's history also included pancreatitis (*id.* at PageID.195), an inflammation of the pancreas that produces common symptoms of severe abdominal pain, nausea, vomiting, diarrhea, bloating, and fever.[3] In November 2018, Plaintiff was admitted to Henry Ford Allegiance Health Hospital for a possible GI bleed. (*Id.* at PageID.198.) Plaintiff was discharged to Duane Waters Hospital. Plaintiff was diagnosed with a non-bleeding gastric ulcer and C. difficile colitis, a "bacteria that can cause swelling and irritation of the large intestine or colon . . . [and] can cause diarrhea, fever, and abdominal cramps."[4]

On April 5, 2019, Plaintiff underwent surgery to remove portions of his large and small intestines and ilium due to his Crohn's disease. (ECF No. 1 at PageID.6.)

B.     **MDOC Diet Programs**

The MDOC provides over 25 different diets as set forth in its Diet Manual. Many diets, such as the high fiber diet and the lactose intolerant diet, are self-select diets that do not require a medical provider order and are available at all MDOC facilities. (ECF No. 23-4 at PageID.179.) Other diets, such as the clear liquid diet, are available at all MDOC facilities but require a medical provider's order. (*Id.*) Some diets—those categorized as therapeutic—such as the low residue, low fiber diet, are available only at facilities with a therapeutic diet line and require a medical

---

[3] https://pancreasfoundation.org/patient-information/about-the-pancreas/common-disorders-of-the-pancreas/ (last visited 1/30/2021).

[4] https://www.uofmhealth.org/health-library/uf6176spec (last visited 1/30/2021).

3

provider's order. (*Id.*) Individualized diets are seldom provided and are permitted only in the "rarest of circumstances when no other available diet option is appropriate and medical necessity is proven." (ECF No. 23-2 at PageID.160.) In such instances, Health Services approval is required after review of the prisoner's medical records shows that an individualized diet is medically necessary. (*Id.*)

MDOC Policy Directive 04.07.101 governs the administration of therapeutic diets, defined as "[a] modified diet plan prescribed by the [medical provider] or dentist for a prisoner whose nutritional needs cannot be adequately met from the MDOC Statewide Standard Menu." Policy Directive 04.07.101 ¶ D. Therapeutic diets must be ordered by the medical provider or dentist based on the guidelines set forth in the Diet Manual. *Id.*, ¶ G. Bureau of Health Care Services Registered Dietitians must review therapeutic diet orders to ensure "appropriateness and make recommendations based on the guidelines of the MDOC Diet Manual." *Id.* Once a prisoner is approved for a therapeutic diet, he must eat from that diet at least 80 percent of the time over a 30-day period. *Id*, ¶ K. A medical detail for a therapeutic diet is valid for six months and, prior to expiration, must be reviewed the dietician. The dietician must complete a chart review and make a recommendation to the medical provider prior to renewal. *Id.* ¶ H.

C. **Defendant Rogers's Involvement**

Defendant Rogers was employed by the MDOC as a Registered Dietitian for about 23 years. She retired from the MDOC on September 4, 2020. (ECF No. 23-2 at PageID.158.)

On July 5, 2017, Plaintiff was seen by Mary Greiner, D.O., for abdominal pain and loose stool. (ECF No. 23-6 at PageID.191–93.) Plaintiff's case was referred to Defendant Rogers for review. Based on Plaintiff's medical history and the Diet Manual, Defendant Rogers recommended the low-residue diet, which the Diet Manual recommends for individuals with Crohn's Disease. (ECF No. 23-2 at PageID.161; ECF No. 23-4 at PageID.185.) Defendant Rogers entered her

recommendation into the system on July 5, 2017, and Savithri Kakani, P.A., approved it the same day. (ECF No. 23-6 at PageID.194.)

In July and August 2018, while Plaintiff was housed at Adrian Correctional Facility, he complained to Defendant Rogers that red meat and onions were triggering and exacerbating his painful symptoms. He also notified her that the cooks often used items such as raw and partially uncooked vegetables, peppers, and potato skins, which were not supposed to be part of his diet. (ECF No. 1 at PageID.4–5.)

In August 2018 Plaintiff was transferred to Lakeland Correctional Facility, and in October 2018, Plaintiff met with Defendant Rogers and told her that red meat, onions, and peppers were causing his flare-ups. He also told her that, despite being on the low residue diet, these items were being served to him on a daily basis. (*Id.* at PageID.5.) Defendant Rogers reviewed Plaintiff's medical record, his current therapeutic diet, and meal attendance log, his store purchases, the Manual of Clinical Dietetics by the Chicago Dietetic Association and other resources. She determined that none of those resources supported Plaintiff's claims and that there was no evidence that the diet the MDOC was providing was causing Plaintiff's symptoms. (ECF No. 17-1 at PageID63; ECF No. 23-2 at PageID.161.) Plaintiff's store purchase log showed that Plaintiff was purchasing spicy food items, such as hot sauce, that would cause gastrointestinal issues for individuals such as Plaintiff and violated his therapeutic diet. (*Id.*; ECF No. 23-7 at PageID.214.) Defendant Rogers also noted that Plaintiff had been hospitalized in November 2018 for a nonbleeding ulcer and C. difficile colitis and had a history of pancreatitis, all of which could cause gastrointestinal complications. In addition, Plaintiff had missed a substantial number of meals from his therapeutic diet. (ECF No. 23-2 at PageID.162.)

On December 5, 2018, Plaintiff was seen by Alexander Stojanovic, M.D., a gastroenterologist, at Duane Waters Hospital. (ECF No. 19-1 at PageID.89.) Plaintiff alleges that Dr. Stojanovic "ordered an individualized therapeutic diet for [Plaintiff] because the specialist believed that certain foods triggered [Plaintiff's] flareups and exacerbated his condition." (ECF No. 1 at PageID.3.) Dr. Stojanovic's treatment notes stated: "The patient also has dietary issues which he feels make his symptoms worse. He should avoid onions and green peppers and all of his vegetables should be well cooked. Also, the patient has noticed that red meat exacerbates his symptoms and should be avoided as much as possible." (ECF No. 19-1 at PageID.90.) Plaintiff again made another request for an individualized diet based on Dr. Stojanovic's recommendations. (ECF No. 20-1 at PageID.104.) Defendant Rogers reviewed Dr. Stojanovic's notations and found that he did not order an individual diet change but rather made recommendations based on Plaintiff's self-reports of his symptoms. (ECF No. 23-2 at PageID.162.) Because Defendant Rogers still could not confirm medical necessity, she advised him that no changes would be made. (ECF No. 20-1 at PageID.104.)

On February 5, 2019, Dr. Stojanovic performed a colonoscopy on Plaintiff and made the following notation: "The patient was given dietary modifications on his last visit, which were not implemented. The patient may have deleterious consequences as a result of non-adherence to the dietary recommendations." (ECF No. 1 at PageID.6.) Plaintiff alleges that Defendant Rogers continued to deny him an individualized diet even after this visit. However, Defendant Rogers reviewed Plaintiff's documentation again and discovered a notation in his medical record from February 13, 2019, stating, "[p]er MP [Plaintiff] is to receive Low Residue diet, as was given at his facility. Inmate has purchased hot sauce, buffalo wings, hot sausage, BBQ sauce, and fireball candy at his facility contradicting GI recommendations." (ECF No. 23-2 at PageID.163; ECF No.

6

23-6 at PageID.199.) Based on her review, Defendant Rogers could not confirm that the therapeutic diet was the cause of Plaintiff's symptoms. (ECF No. 23-2 at PageID.163.)

## II. Discussion

### A. Motion for Summary Judgment

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Plaintiff alleges that Defendant Rogers violated his Eighth Amendment right to adequate medical care when she refused to provide him an individualized therapeutic diet in accordance with Dr. Stojanovic's prescription for such diet, *i.e.*, omission of onions, green pepper and red meat from the low residue diet Plaintiff was receiving. Defendant Rogers argues that she is entitled to summary judgment on two grounds. First, she contends that because she recommended that Plaintiff be placed on the low-residue diet—the diet specifically identified in the Diet Manual as appropriate for acute phases of Crohn's Disease—Plaintiff's claim really amounts to a difference of opinion about the adequacy of the medical care that Defendant Rogers provided. Second, she argues that she lacked the authority to provide Plaintiff the individualized diet that he seeks. Because Plaintiff's claim amounts to a mere disagreement with the care that Defendant Rogers

7

provided, the Court need not address Defendant Rogers's authority, if any, to implement an individualized diet.

### 1. Applicable Law

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The unnecessary and wanton infliction of pain encompasses "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001). Determining whether denial of medical care amounts to an Eighth Amendment violation involves two steps. First, the court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need" sufficient to implicate the Eighth Amendment is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must

"place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742 (internal quotation marks omitted).

If the plaintiff satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837 (1994). *Id.* at 837. In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the plaintiff must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005).

"A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful." *Rhinehart*, 894 F.3d at 738 (citing *Farmer*, 511 U.S. at 844). So long as a doctor does not knowingly expose a prisoner to an excessive risk of serious harm and exercises reasonable medical judgment, the Sixth Circuit will defer to the doctor's judgment. *Id.* "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Moreover, where the plaintiff's claim amounts to disagreement with the medical provider's judgment or approach to medical treatment, the claim against the defendant-provider fails. *See White v. Corr. Med. Servs.*, 94 F. App'x 262, 264 (6th Cir. 2004).

9

2. **Analysis**

As an initial matter, Defendant Rogers does not dispute that Crohn's Disease is an objectively serious medical condition for purposes of the Eighth Amendment. (ECF No. 23 at PageID.136.) *See Hendricks v. Ohio Dep't of Rehab. & Corr.*, No. 2:11-cv-40, 2013 WL 765601, at *11 (S.D. Ohio Feb. 28, 2013), *report and recommendation adopted*, 2013 WL 5408258 (S.D. Ohio Sept. 25, 2013) ("While the parties may disagree on the precise diagnosis of Mr. Hendricks' condition—whether ulcerative colitis or Crohn's disease—the fact that Mr. Hendricks suffered from a serious medical condition is not at issue here."). The question, then, is whether Defendant Rogers ignored a serious risk of harm to Plaintiff's health or, instead, whether she provided reasonable treatment.

The evidence set forth above shows that Defendant Rogers was not deliberately indifferent to Plaintiff's dietary needs for his Crohn's disease. In July 2017, when Dr. Greiner referred Plaintiff's case to Defendant Rogers for recommendation of a therapeutic diet, Defendant Rogers recommended the low-residue diet—the diet specifically recommended in the MDOC's Diet Manual for prisoners with Crohn's Disease. This recommendation was certainly a reasonable exercise of medical judgment, as it is commonly accepted that a low-residue diet is a proper medical diet for patients with Crohn's Disease. *See Saidock v. Carrington-McClain*, No. 3:19cv1319, 2020 WL 2523286, at *2 (D. Conn. May 18, 2020) (noting that "[a] low residue diet is necessary for individuals suffering from irritable bowel syndrome . . . , ulcerative colitis, and Crohn's Disease"); *Stump v. Comm'r of Soc. Sec.*, No. 3:18-cv-1819, 2019 WL 4228430, at *2, 4 (N.D. Ohio July 1, 2019), *report and recommendation adopted*, 2019 WL 4219276 (N.D. Ohio Sept. 5, 2019) (noting that the claimant's gastroenterologist instructed the plaintiff to follow a low residual diet); *Giles v. Felker*, No. 2:11-cv-1825, 2016 WL 758729, at *2 (E.D. Cal. Feb. 26, 2016) (prisoner with Crohn's Disease prescribed "low residue diet"). Nothing about Defendant Rogers's

recommendation indicates that she was deliberately indifferent to Plaintiff's serious medical needs. *See Brooks v. County of Macomb*, No. 13-cv-15082, 2015 WL 4430190, at *8 (E.D. Mich. July 20, 2015) (holding that the defendant doctor was not deliberately indifferent to the treatment of the plaintiff's Crohn's Disease by prescribing the low-residue diet recommended for Crohn's patients instead of fresh fruits and vegetables that the plaintiff preferred).

In addition, when Plaintiff complained about his diet in 2018, Defendant Rogers conducted a holistic review, considering Plaintiff's medical record—including Plaintiff's recent hospitalization for a nonbleeding ulcer and C. difficile colitis and his history of pancreatitis, his current therapeutic diet, his store purchases, and other resources and determined that there was no medical evidence supporting that the low-residue diet Plaintiff was receiving was causing his symptoms, which Plaintiff had experienced for years. In short, Plaintiff's claim amounts to a disagreement with Defendant Rogers's judgment, which does not suffice to support an Eighth Amendment claim. *See Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381, at *1 (6th Cir. Sept. 20, 1995) (holding that the plaintiff's claim against a dietician regarding his need for a vegetarian diet was merely a "difference of opinion . . . [that] [wa]s insufficient to state a claim under the Eighth Amendment"); *Bush v. Michigan Dep't of Corrs.*, No. 1:12-cv-192, 2013 WL 4602544, at *4 (W.D. Mich. Aug. 29, 2013) (finding that the plaintiff's insistence that he needed a 4 mg. low sodium diet involved, "[a]t most . . . a difference of opinion between the prisoner and the dietician").

In *Witek v. Washington*, No. 2:17-cv-13647, 2019 WL 3422938 (E.D. Mich. June 22, 2019), *report and recommendation adopted*, 2019 WL 3413199 (E.D. Mich. July 29, 2019), the plaintiff alleged that the defendant dietician directed his treatment contrary to the treatment prescribed by his non-MDOC health professionals by failing to issue details for a low-residue diet.

11

*Id.* at *8. The court concluded that such claims were "of the negligence or medical malpractice ilk," observing that "[e]ven if Defendant Anderson's approach was different than the approaches of two other MDOC dieticians, or three gastroenterologists, or three surgeons . . . it really amounts to a disagreement over the adequacy of Anderson's actions and judgments, sounding in professional negligence." *Id.* (internal quotation marks and brackets omitted).

Here, Plaintiff fails to show that Defendant Rogers's decision to place and continue him on the low-residue therapeutic diet was anything more than a difference of opinion, possibly raising a claim of medical malpractice, but not an Eighth Amendment claim. Plaintiff's reliance on *Blau v. Fortescue*, No. 16-13971, 2019 WL 2612932 (E.D. Mich. June 26, 2019), to undermine Defendant Rogers's claim of medical judgment is misplaced. In contrast to the instant case, the defendant in *Blau* had denied the plaintiff a low-sodium therapeutic diet, in part, because the plaintiff's purchase of unhealthy snacks from the prison store would mitigate the benefits of the diet the plaintiff had sought. The court found that the plaintiff's evidence created a genuine issue of material fact as to whether the defendant was deliberately indifferent to the plaintiff's medical need. The court found the defendant's rationale regarding the plaintiff's snack purchases "odd," since "healthy meals are even more important for someone with poor impulse control between meals." *Id.* at *5. Here, Defendant Rogers did not deny Plaintiff a therapeutic diet, nor did she consider his store purchases as a basis to deny him a therapeutic diet. Rather, she considered his store purchases as a factor bearing on whether Plaintiff's consumption of foods outside of those provided on the low-residue diet might be contributing to Plaintiff's symptoms.

Plaintiff's claim thus boils down to whether Defendant Rogers was required to follow or comply with Dr. Stojanovic's recommendation that Plaintiff be provided with an individualized diet excluding onions, green pepper, and red meat from the low-residue diet. Even if Dr.

12

Stojanovic's recommendations can be considered orders from a specialist, Defendant Rogers was entitled to use her professional judgment in determining whether there was medical evidence to support recommending an individualized diet for Plaintiff. Both of Dr. Stojanovic's notes make clear that his recommendations were based on Plaintiff's self-reports of his symptoms rather than on medical evidence or tests. In fact, nothing in the record suggests that Dr. Stojanovic had reviewed any of the materials Defendant Rogers considered in determining that there was no basis to conclude that three ingredients in Plaintiff's therapeutic diet were causing his symptoms. As noted in *Witek*, *supra*, whether Defendant Rogers's "approach was different than the approaches of two other MDOC dieticians, or three gastroenterologists, or three surgeons," 2019 WL 3422938, at *8, Plaintiff's complaint, at bottom, presents a disagreement over his medical treatment.

The cases Plaintiff cites in support of his argument are distinguishable. In *Hodges v. Corizon*, No. 14-11837, 2016 WL 4055662 (E.D. Mich. June 22, 2016), an orthopedist performed surgery on the plaintiff's wrist, during which he excised what he believed to be a benign tumor. Subsequent testing indicated that the tumor was malignant, and the doctor recommended that the plaintiff be seen as early as possible by a radiation oncologist who could determine the appropriate treatment, likely radiation. *Id.* at *2-3. Contrary to the doctor's directive, the Corizon providers decided simply to monitor the plaintiff's condition with follow-up x-rays. By the time the plaintiff was seen by a specialist, the tumor had recurred and grown and metastasized in his lungs, leading to an eventual amputation of the plaintiff's right arm. *Id.* at *6. The court said that, while a physician is usually not deliberately indifferent simply because his assessment of the plaintiff's medical needs differs from another physician's assessment, "the law is also clear that notwithstanding that general rule, there is a point at which a doctor's prescribed treatment is so inappropriate under the circumstances that it recklessly disregards the risk to the inmate's health,

and therefore constitutes deliberate indifference." *Id.* at *10 (citing *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005)). In *Rhinehart v. Scutt*, No. 2:11-cv-11254, 2014 WL 5361936 (E.D. Mich. June 20, 2014), the prisoner had been transferred to facilitate treatment for a tumor on his liver that was believed to be malignant. The plaintiffs alleged, among other things, that following the transfer, the prisoner's treating specialist had recommended that the prisoner should be transferred to a tertiary care facility for a procedure and cautioned that the failure to do so would increase the prisoner's risk of serious harm and could result in death. The defendant was aware of this recommendation, but he refused to approve the procedure. *Id.* at *3. The prisoner never received the treatment that he needed and died of complications less than a month after surgery to repair a broken hip. *Id.* The court held that, while the defendant might be able to demonstrate on summary judgment that his acts and omissions resulted from his own exercise of medical judgment rather than deliberate indifference, the plaintiffs had adequately stated a claim based on the defendant's alleged failure to follow the specialist's recommended course of treatment. *Id.* at *20–21.

*Hodges* and *Rhinehart* do not stand for the proposition that when faced with a recommendation from a gastroenterologist that certain ingredients should be eliminated from a patient's diet—particularly where the recommendation is based on nothing more than the patient's self-reported symptoms—a dietician is not free to exercise her own medical judgment in determining whether an individualized therapeutic diet is medically supported. In both *Hodges* and *Scutt*, specific recognized procedures were available to treat the medical conditions at issue. Here, as set forth above, a low-residue diet is widely recognized as the proper diet for a Crohn's patient, but there is no known cure for the disease. *See Friedman v. United States*, 87 F. App'x 459, 462 (6th Cir. 2003) ("The record also reflects that there is no such thing as a 'Crohn's diet.' Friedman's post-incarceration gastroenterologist (Wiley) explained that there is no clear-cut association

14

between a person's diet and flare-ups of Crohn's disease symptoms, and that the cause of Crohn's disease is unknown."). Moreover, Plaintiff offers no medical evidence specifically linking the three ingredients at issue to flare-ups in his Crohn's symptoms. Therefore, his claim fails.

### 3. **Qualified Immunity**

Defendant Rogers also raises qualified immunity as a defense, arguing that there is no clearly established Eighth Amendment right to an individualized diet. (ECF No. 23 at PageID.146.) Plaintiff argues that Defendant Rogers is not entitled to qualified immunity because the applicable law is clearly established. (ECF No. 24 at PageID.245.)

Because qualified immunity is an alternative argument, the Court need not address it if it agrees with the above recommendation that Plaintiff has failed to establish a constitutional violation. *See Courtright v. City of Battle Creek*, 839 F.3d 513, 519 (6th Cir. 2016) ("If either step [of the qualified immunity inquiry] is not satisfied, then qualified immunity shields the government from civil damages.").

### B. **Motion for Preliminary Injunction**

Plaintiff requests that the Court enter a preliminary injunction recommending that the Court order Defendant Rogers or her successor to implement the individualized diet he requests. In light of the recommendation set forth above that Defendant Rogers is entitled to summary judgment, I recommend that Plaintiff's motion for preliminary injunction be denied as moot. *See Smith v. Alford*, No. 1:13-cv-694, 2015 WL 6159397, at *5 (W.D. Mich. Oct. 20, 2015) (granting the defendant's motion for summary judgment and dismissing as moot the plaintiff's motion for preliminary injunction); *Moses v. Rapelje*, No. 08-12161, 2009 WL 1133345, at *1, 11 (E.D. Mich. Apr. 22, 2009) (granting summary judgment and denying the plaintiff's motion for preliminary injunction as moot).

## III. Conclusion

For the reasons set forth above, I recommend that the Court grant Defendant Rogers's motion for summary judgment (ECF No. 22), deny Plaintiff's motion for a preliminary injunction (ECF No. 17) as moot, and dismiss Plaintiff's complaint with prejudice.

Dated: February 9, 2021  /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).